IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANDREW D. COE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 15-cv-6869 |
| v. ) | |
| ) | Judge Robert M. Dow, Jr. |
| OFFICER ATKINS, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendants Darrin Atkins, Brandi Walker, and Damian Bragg's partial motion to dismiss [44]. For the reasons set forth below, Defendants' partial motion to dismiss [44] is granted. Plaintiff is given until June 16, 2017 to file a second amended complaint consistent with this opinion.

**I.    Background**

This case involves the rare intersection of the Eighth Amendment and "Air Jordan" basketball shoes. According to the amended complaint, Plaintiff Andrew Coe is paralyzed below both ankles and cannot walk easily without leg braces supported by firm, high-top shoes. [29, ¶ 2.] Starting on September 26, 2014, Plaintiff was incarcerated at Stateville Correctional Center in Joliet, Illinois. *Id.* ¶ 12. Upon arrival, doctors from Wexford Health Sources, Inc. issued him a permit for braces and high-top shoes. *Id.* Plaintiff happened to be wearing high-top leather Air Jordans, and was allowed to keep those shoes for the time being. *Id.*

On October 15, 2014, Defendant Dr. Stephen Ritz "refused to prescribe high-top shoes for Plaintiff"—a decision that Plaintiff contends was erroneous.[1] [29, ¶ 15.] On November 19,

---

[1] Plaintiff discusses two of his prior shoe-related medical recommendations from Wexford and the Illinois Department of Corrections ("IDOC") to show this was error. He alleges that, in 2003, Wexford

2014, correctional officers Defendants Darrin Atkins and Brandi Walker confiscated Plaintiff's Air Jordans. *Id.* Coe was not left shoeless. Instead, he was given prison-issue shoes, but Plaintiff alleges that these shoes "did not support his braces and hold them in place." *Id.* ¶ 12. Plaintiff ultimately slipped out of those replacement shoes, and injured his feet—once on November 19 (injuring his right pinky toe) and again on December 10 (injuring the second digit on his left foot). He does not elaborate on the nature of his injury or the treatment he received.

The amended complaint contains two other allegations of note. First, Plaintiff alleges that on November 19, after his injury, an unidentified IDOC doctor told Defendants Atkins and Walker that Plaintiff "needed the 'Air Jordans' or equivalent high-top firm shoes, but they ignored that directive." *Id.* ¶ 14. Second, Plaintiff alleges that two correctional officers— Defendants Lorient Stanback and Damian Bragg—intentionally delayed seeking medical attention for Plaintiff's December 10 injury for "an hour-and-a half" while Plaintiff was "screaming in pain." *Id.* ¶¶ 17, 45–46.

Plaintiff filed a four-count complaint [29], asserting Eighth Amendment claims for intentional interference with treatment against Officers Atkins and Walker (Count I), refusal to provide treatment against Dr. Ritz (Count II), intentional interference with treatment against Officer Stanback (Count III), and intentional interference with treatment against Officers Stanback and Bragg related to Plaintiff's December 10, 2014 injury (Count IV). Defendants Atkins, Walker, and Bragg moved to dismiss the specific claims asserted against each of them in Counts I and IV [44].

---

recommended that he be allowed to wear "tennis shoes" [29, ¶ 11], and, on October 9, 2014, an IDOC physician found that he needed "well cushioned and arched walking shoes." *Id.* ¶ 15. Neither really describes a pair of "high-top leather 'Air Jordan' basketball shoes." *Id.* ¶ 12. Tennis shoes are typically low-top. Air Jordans are not the quintessential arched walking shoe. Nevertheless, at this primary stage, the Court construes these recommendations to support the need for a firm high-top shoe.

## II. Legal Standard

To survive a Federal Rule of Civil Procedure ("Rule") 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, the complaint first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)) (alteration in original). Second, the factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level." *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). Dismissal for failure to state a claim under Rule 12(b)(6) is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly,* 550 U.S. at 558. In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts as true all of Plaintiff's well-pleaded factual allegations and draws all reasonable inferences in Plaintiff's favor. *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

## III. Analysis

Correctional officials and health care providers may not act with deliberate indifference to an inmate's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Fields v. Smith*, 653 F.3d 550, 554 (7th Cir. 2011). "Deliberate indifference to serious medical needs of a prisoner constitutes the unnecessary and wanton infliction of pain forbidden by the Constitution." *Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011) (internal quotations and citation omitted). Deliberate indifference has both an objective and a subjective element: the

inmate must have an objectively serious medical condition, and the Defendant in question must be subjectively aware of and consciously disregard the inmate's medical need. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Estelle*, 429 U.S. at 103–04; see also *Roe v. Elyea*, 631 F.3d 843, 862 (7th Cir. 2011).

"An objectively serious medical condition is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention." *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010) (citation and internal quotation marks omitted). "A medical condition need not be life-threatening to be serious; rather, it could be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated." *Id.*

To satisfy the subjective element of deliberate indifference, the official must have "acted with a sufficiently culpable state of mind." *Arnett*, 658 F.3d at 751. That is, the official "must know of and disregard an excessive risk to inmate health." *Hayes v. Snyder*, 546 F.3d 516, 522 (7th Cir. 2008). The official must "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and "must also draw the inference." *Farmer*, 511 U.S. at 837; accord *Vance v. Peters*, 97 F.3d 987, 993 (7th Cir. 1996) ("[P]laintiff still has the burden of demonstrating that the communication, in its content and manner of transmission, gave the prison official sufficient notice to alert him or her to 'an excessive risk to inmate health or safety[.]'" (quoting *Farmer*, 511 U.S. at 837)). This state of mind is akin to recklessness, not negligence. *Arnett*, 658 F.3d at 751. Neither medical malpractice nor a mere disagreement with a doctor's medical judgment amounts to deliberate indifference. *Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010) (citing *Estelle*, 429 U.S. at 106).

In the context of medical professionals, "[a] medical professional is entitled to deference in treatment decisions unless no minimally competent professional would have so responded under those circumstances." *Sain v. Wood*, 512 F.3d 886, 894–95 (7th Cir. 2008) (citation and internal quotation marks omitted). The medical professional's decisions must be "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Id.* at 895 (citation and internal quotation marks omitted). In contrast, "a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." *Arnett*, 658 F.3d at 755. The non-medical official must have "a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner" to be found deliberately indifferent. *Id.* (citation and internal quotation marks omitted); accord *Berry,* 604 F.3d at 440 ("As a nonmedical administrator, [defendant] was entitled to defer to the judgment of jail health professionals so long as he did not ignore [the inmate].").

With these principles in mind, the Court turns to Defendants' motion. Defendants Atkins and Walker seek dismissal of Count I, while Defendant Bragg seeks dismissal of Count IV, but only with respect to him. The Court addresses their arguments separately.

**1. Count I: Atkins and Walker**

Defendants Atkins and Walker move to dismiss Count I, arguing that Plaintiff lacked "an objectively serious medical need to possess these shoes," which were contraband, and that Defendants were entitled to rely on the medical decisions of prior IDOC physicians who declined to prescribe Plaintiff high-top shoes. [44-1, at 4–5.] Plaintiff responds that his objectively serious medical condition was his *paralysis* (not his need for the shoes), and Defendants knew of and disregarded medical advice that Plaintiff "needed the high-top shoes." [49, at 4.]

Specifically, Defendants knew and disregarded the fact that (1) Plaintiff had received an "initial permit" to wear the shoes "less than two months earlier"; (2) they guarded him for two months before confiscating these shoes; and (3) "an IDOC doctor told Defendants that [Plaintiff] needed the shoes the same day they took them," which was after his first injury but before his second injury. *Id.* Thus, Defendant's "failure to use their authority to take steps to correct the condition by contacting the appropriate medical officials may qualify as deliberate indifference." *Id.* at 5.

Based on these facts, Plaintiff has failed to state a claim that Defendants were deliberately indifferent at the time of Plaintiff's November injury. The amended complaint states that Plaintiff's physician, Dr. Ritz, "refused to prescribe high-top shoes for Plaintiff" more than a month before the November injury. [29, ¶ 15.] In other words, Plaintiff's prescribed treatment at the time of November injury did not require high-top shoes. Accordingly, Plaintiff's November injury cannot be traced to Defendant Atkins' or Walker's "refusal to provide an inmate with prescribed [treatment] or to follow the advice of a specialist." *Arnett*, 658 F.3d at 754. Likewise, Plaintiff has not alleged any facts suggesting that these Defendants had reason to believe or actual knowledge that Dr. Ritz was "mistreating (not treating)" Plaintiff. *Id.* (citation and internal quotation marks omitted). After all, Defendants gave Plaintiff replacement shoes and allowed him to retain his leg braces. They did not "ignore" his medical needs. [49, at 4.] Plaintiff offers no authority for proposition that these correctional officers were required to override Dr. Ritz's medical conclusions simply because Plaintiff was initially allowed to keep his Air Jordans at intake and Defendants had guarded previously him. The law is to the contrary. See *Berry*, 604 F.3d at 440 ("[T]he law encourages non-medical security and administrative personnel at jails and prisons to defer to the professional medical judgments of the physicians and nurses treating the prisoners in their care without fear of liability for doing so."); *McGee v.*

*Adams*, 721 F.3d 474, 483 (7th Cir. 2013) ("The non-medical professional defendants, in turn, were entitled to rely on the medical professionals' determination that McGee could wear metal leg restraints.").

The Court reaches the same conclusion for the period following Plaintiff's November injury, although for slightly different reasons. Plaintiff pleads that after he was injured on November 19, both Defendants were given a "directive" by an unidentified IDOC doctor that Plaintiff "needed" high-top firm shoes. [29, ¶ 14.] This single allegation—as presently pled—is too vague to save this Count from dismissal. Plaintiff does not plead that this unknown physician actually prescribed Plaintiff "high-top firm shoes," issued him a permit for his Air Jordans, or even treated Plaintiff.[2] Indeed, Plaintiff's argument suggests that this doctor was *not* a medical official with responsibility for treating Plaintiff (otherwise, the claim that Defendants were deliberately indifferent for failing to "contact[] the appropriate medical officials" to correct Plaintiff's course of treatment [49, at 5] makes little sense). Nor does Plaintiff contend that this "directive" means that Defendants actually knew or believed that Dr. Ritz was mistreating or failing to treat Plaintiff's paralysis. Finally, Plaintiff does explain how this "directive" shows that Defendants knew that the decision to provide Plaintiff braces but only prison-issue shoes (rather than Air Jordans or high-top shoes) exposed Plaintiff to a "substantial risk of serious harm." *Farmer*, 511 U.S. at 837. Without more, this claim is not plausible.

Therefore, Plaintiff fails to plead to sufficient fact showing that Defendants were deliberately indifferent to Plaintiff's serious medical needs. The Court grants Defendants' motion to dismiss Count I without prejudice and with leave to replead by June 16, 2017, if Plaintiff believes that he can do so consistent with the discussion above.

---

[2] Plaintiff separately alleges that Stanback destroyed (or hid) a medical permit establishing that Plaintiff had permission to wear the Air Jordans. Plaintiff does not plead if it was this IDOC physician or someone else who issued this permit or that Atkins and Walker had knowledge of this lost permit.

### 2. Count IV: Bragg

In Count IV, Plaintiff contends Defendant Bragg was deliberately indifferent to his serious medical needs after his December 10, 2014, toe injury because Defendant Bragg and Stanback "deliberately delayed seeking medical treatment for [Plaintiff] for an hour-and-a-half," which caused Plaintiff to endure "unnecessary additional pain and suffering." [29, ¶¶ 46–47.] Defendant contends that this claim should be dismissed because Plaintiff fails to show any "detrimental impact to his injury as a result of the delay," and, in any event, this "brief delay in treatment is insufficient to state a claim." [44-1, at 5–6; 51, at 3–4] Plaintiff responds that "inexplicable delay[s] in treatment" can show deliberate indifference and he is not required to show the delay caused a detrimental impact on his health to state a claim.

The Court agrees with Plaintiff on both points. "A delay in treatment may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010). In other words, "even if [an inmate's] condition did not worsen from the delay, deliberate indifference to prolonged, unnecessary pain can itself be the basis for an Eighth Amendment claim." *Smith v. Knox Cty. Jail*, 666 F.3d 1037, 1039–40 (7th Cir. 2012); *Grieveson v. Anderson*, 538 F.3d 763, 779 (7th Cir. 2008) (reversing denial of summary judgment where plaintiff introduced his medical records showing that he "he had a nasal fracture, that he could experience further bleeding, and that he may need to see a specialist," which would allow a jury to infer that the officers' delays in arranging medical treatment caused plaintiff "many more hours of needless suffering for no reason" when they waited one-and-a-half days to secure medical treatment for him).

"Of course, delays are common in the prison setting with limited resources." *Petties v. Carter*, 836 F.3d 722, 730 (7th Cir. 2016). "Delay is not a factor that is either always, or never,

significant. Instead, the length of delay that is tolerable depends on the seriousness of the condition and the ease of providing treatment." *McGowan*, 612 F.3d at 640; accord *Berry*, 604 F.3d at 442 ("[W]e do not suggest that a minor delay in treatment constitutes deliberate indifference."). For example, in *McGowan*, the Seventh Circuit concluded that the plaintiff had stated a claim because he "set forth a plausible account of the facts showing how much delay he experienced, how often he and others asked [defendant] to act, and what the consequences were of inaction." *Id.* The issue here is whether Plaintiff has pled enough facts regarding his delay in receiving treatment to suggest that Defendant Bragg was deliberately indifferent.

The Court concludes that he has not. Plaintiff pleads merely that he "injured" his toe, was "screaming in pain," and experienced "unnecessary additional pain and suffering" as a result of the hour-and-a-half delay. [29, ¶¶ 46–47.] He does not plead any facts, for example, about the nature and severity of his injury, how his toe was ultimately treated, or the ease and availability of faster treatment on December 10. Cf. *Brown v. Darnold*, 505 F. App'x 584, 587 (7th Cir. 2013) ("[W]e do not think the circumstances here, as alleged by Brown—back pain, which can be elusive and difficult to treat, and a delay of a few hours in providing a non-prescription pain reliever—add up to an Eighth Amendment violation."); *Murphy v. Walker*, 51 F.3d 714, 717 (7th Cir. 1995) ("[T]wo hours does not seem like an unreasonably long wait to x-ray, examine, and possibly cast a fractured extremity, and [Plaintiff] does not allege that the injury required immediate attention. Thus, the district court properly dismissed this claim."); *Holt v. Doe*, 2017 WL 74767, at *2–3 (W.D. Wis. Jan. 6, 2017) (dismissing complaint based on "one-hour delay in treatment" for broken bones around plaintiff's eye where "plaintiff has not alleged facts showing that it would have been so obvious to the attending nurse that plaintiff was in immediate need of medical attention that her failure to take him to the hospital *at that time*

would subject him to a substantial risk of serious harm"); *Castro v. Illinois Dep't of Corr.*, 2015 WL 4760766, at *3 (S.D. Ill. Aug. 12, 2015) (dismissing § 1983 claim based on a "one-and-a-half hour delay in getting [plaintiff] to the clinic" for treatment after a fall); *Newsome v. Godinez*, 2013 WL 5799769, at *2 (C.D. Ill. Oct. 28, 2013) (dismissing § 1983 claim based on "the delay of seeing a physician for a few hours" to treat his esophagus and ulcer (collecting cases)). Notably, Plaintiff does not specify if his injury was a break, a fracture, a sprain, a cut, or something else. He does not plead whether or how often he asked Defendant to take him to the doctor on December 10. He does not plead why he believes this delay caused him unnecessarily prolonged pain. See *Petties*, 836 F.3d at 730. He does not even compare this incident with the prison's response to and the treatment he received for his November toe-related injury.

Nothing about a delay of this length for an injury of this kind suggests, on its face, that Defendant Bragg was deliberately disregarding an excessive risk to Plaintiff's health by withholding a readily available treatment from him. Cf. *Gil v. Reed*, 381 F.3d 649, 662 (7th Cir. 2004) ("Here the cost of handing over the prescribed antibiotic was zero. The drug had been prescribed and dispensed into a bottle labeled for [Plaintiff] and was in [Defendant's] hand when he refused to hand it over. [Plaintiff's] need for the antibiotic to treat a serious infection involving a surgical wound was substantial."); *Lewis v. Mitchell*, 2013 WL 772836, at *2 (C.D. Ill. Feb. 28, 2013) ("If the delays in treatment did cause Plaintiff harm, [defendant] would not be deliberately indifferent if she had no authority to arrange for faster treatment."). "In fact, the public often waits longer at hospital emergency rooms." *Langston v. Peters*, 100 F.3d 1235, 1240 (7th Cir. 1996) (affirming summary judgment where a "one-hour delay" in treating injuries from a rape was found "insufficient to reach constitutional proportions"). Plaintiff does not cite a single case where an hour-and-a-half delay to treat a foot- or toe-related injury was found to

state a deliberate indifference claim.[3]  "Anyone who has ever visited a doctor's office knows that some delays in treatment are inevitable, particularly absent a life-threatening emergency.  Such delays are even more likely in the prison environment."  *Berry*, 604 F.3d at 442.  While this does not mean that no such claim could be stated against Defendant Bragg, Plaintiff's present allegations are insufficient to show the plausibility of any deliberate indifference claim here.  Accordingly, the Court grants Defendants' motion to dismiss Count IV with respect to Defendant Bragg without prejudice and with leave to replead by June 16, 2017 if Plaintiff believes that he can do so consistent with the discussion above.

## IV.     Conclusion

For the foregoing reasons, the Court grants Defendants' partial motion to dismiss [44] Counts I and IV.  Plaintiff is given until June 16, 2017 to file an amended complaint.

Dated: May 15, 2017

_____
Robert M. Dow, Jr.
United States District Judge

---

[3] Courts to face the question have reached the opposite conclusion.  See, *e.g.*, *Williams v. N.Y. City Dep't of Corr.*, 2016 WL 393438, at *2–3 (E.D.N.Y. Jan. 31, 2016) (granting summary judgment because "the fact that plaintiff was treated within 24 hours for an injured toe negates the ability of a reasonable jury to find 'deliberate indifference'" and concluding that "[t]he bottom line is that a sprained toe, even with preexisting mild-moderate arthritis, which is treated within appropriately 24 hours of the injury, is simply not a severe enough situation to support a claim that prison authorities have violated the Eighth Amendment"); *Stavropoulos v. Wellstar Health Servs. & or Med. Grp.*, 2014 WL 3427540, at *5 (N.D. Ga. July 14, 2014) (dismissing complaint where defendant "knew that he had hurt his toe and that it was bleeding" and waited three days to treat him, concluding that this "was [not] a constitutionally significant delay that showed deliberate indifference"); *Houston v. Horn*, 2010 WL 1948612, at *10 (S.D.N.Y. May 13, 2010) (granting summary judgment on claim that plaintiff "had to wait several hours before being examined by a clinician" for his "injured toe," which was not "sufficiently serious"); *Ballard v. Williams*, 2002 WL 32494504, at *1 (W.D. Va. July 18, 2002) ("[Plaintiff] has failed to establish a serious medical need in that his complaint involves a swollen and sore toe. * * * Failure to immediately perform an X-ray, under the facts [Plaintiff] alleges, does not constitute deliberate indifference.").

11