UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ANDREW COE, | | |
| Plaintiff, | | No. 15 C 6869 |
| v. | | Judge Thomas M. Durkin |
| DARRIN ATKINS, BRANDI WALKER, LORIENT STANBACK, AND DAMIAN BRAGG, AND DR. STEPHEN RITZ, | | |
| Defendants. | | |

## MEMORANDUM OPINION AND ORDER

Before the Court are Defendants' motions for summary judgment. R. 200, 203. For the following reasons, those motions are granted.

## Background

Coe is an inmate in the Illinois' Department of Corrections ("IDOC"). R. 204 ("Ofc. SOF") ¶ 1. Due to nerve damage to his L4 vertebra from being shot in the back in 1999, Coe has no feeling in any part of his feet. *Id.* ¶¶ 12–14. As a result, Coe requires a cane and leg braces to walk. *Id.* ¶ 17.

On September 26, 2014, Coe arrived at the IDOC's Northern Reception and Classification Center ("NRC") in Joliet, Illinois wearing his leg braces and Air Jordan VII basketball shoes ("Air Jordans"), which feature a high collar around the ankle. *Id.* ¶¶ 20–21, 26–27. Coe received a medical permit from the NRC Health Care Unit ("HCU") for a low bunk, a low-gallery cell, leg braces, a cane, and continued possession of the shoes he entered the facility with for 30 days. *Id.* ¶¶ 28–30, 32.

Dr. Ritz is Wexford's Corporate Medical Director for Utilization Management. R. 201 ("Ritz SOF") ¶ 4. Dr. Ritz does not examine patients or issue or approve permits. *Id.* ¶¶ 19, 23. Rather, he helps determine whether a referral for outside medical services or for durable medical equipment submitted by the site Medical Director is medically necessary and clinically appropriate. *Id.* ¶¶ 15, 16, 25. On October 9, 2014, Dr. Ritz received a Medical Special Services Referral and Report from the site Medical Director, Dr. Davida. *Id.* ¶ 26. It requested "NRC commissary walking shoes" for Coe and stated that Coe needed "well cushioned and arched walking shoes." *Id.*; R. 202-3. The referral made no mention of leg braces or the need for specific shoes to stabilize leg braces. Ritz SOF ¶ 28. Dr. Ritz determined that there was no medical necessity for walking shoes, adding that Coe had "access to walking shoes in the commissary, as well as heel cups and shoe inserts." *Id.* ¶¶ 27–28; R. 202-4.

As of October 26, 2014, Coe's permit expired and because it was not renewed or reissued, the Air Jordans became contraband. Ofc. SOF ¶¶ 9–10. On November 19, 2014, Officer Best (née Walker) noticed Coe was wearing Air Jordans and asked him whether he had a permit for them. *Id.* ¶ 37. Coe gave Officer Best the expired permit. *Id.* ¶ 38. Officers Best and Atkins went to the HCU, where HCU staff informed them that Coe did not have an active medical permit for the Air Jordans. *Id.* ¶¶ 39, 42. That day, Officers Best and Atkins confiscated the Air Jordans and provided Coe with replacement standard issue shoes. *Id.* ¶¶ 43–44, 50.

On the same day, Coe's right foot slipped out of his shoe and he stubbed his right pinkie toe on the wall in his cell, resulting in a one-inch laceration. *Id.* ¶¶ 51, 53–54. Coe received immediate treatment at the HCU, and two days later, a nurse cleaned and bandaged the toe and gave Coe a tetanus shot. *Id.* ¶¶ 52, 55–57. On or around December 10 or 11, 2014, while in a different housing unit, Coe again slipped out of his shoes and stubbed his left second toe. *Id.* ¶¶ 59, 61. He claims that Officers Bragg and Stanback, who were sitting in an adjacent office, ignored him as he cried out for help. Officers Bragg and Stanback deny that they heard any individual calling out for medical assistance. *Id.* ¶¶ 68–69. Ninety minutes later, another correctional officer took Coe to the HCU for treatment. *Id.* ¶¶ 64, 66–67. Coe again lacerated but did not break his toe. *Id.* ¶¶ 62, 68.

Coe claims that Defendants violated the Eighth Amendment. R. 73. Specifically, he alleges that Officers Best and Atkins improperly confiscated his Air Jordans and replaced them with inadequate shoes (Count I), that Dr. Ritz wrongly denied the referral from Dr. Davida (Count II), and that Officers Stanback and Bragg deliberately delayed his treatment for his second injury (Count III). *Id.*

## Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). To defeat summary judgment, a nonmovant must produce more than a "mere scintilla of evidence" and come forward with "specific facts showing that there is a genuine issue for trial." *Johnson v. Advocate Health and Hosps. Corp.*, 892 F.3d

887, 894, 896 (7th Cir. 2018). The Court considers the entire evidentiary record and must view all of the evidence and draw all reasonable inferences from that evidence in the light most favorable to the nonmovant. *Horton v. Pobjecky*, 883 F.3d 941, 948 (7th Cir. 2018). The Court does not "weigh conflicting evidence, resolve swearing contests, determine credibility, or ponder which party's version of the facts is most likely to be true." *Stewart v. Wexford Health Sources, Inc.*, 14 F.4th 757, 760 (7th Cir. 2021). Ultimately, summary judgment is warranted only if a reasonable jury could not return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## Discussion

I.  Failure to Comply with Local Rule 56.1

Local Rule 56.1 requires each party opposing a summary judgment motion to file a response to the movant's statement of material facts ("SOF"), either admitting, denying, or admitting/denying in part each numbered paragraph of the SOF. N.D. Ill. L.R. 56.1(b)(2). "Asserted facts may be deemed admitted if not controverted with specific citations to evidentiary material." N.D. Ill. L.R. 56.1(e)(3). Here, Coe failed to supply any citations to the record in his responses to Defendants' SOFs. *See* R. 208. Further, in response to numerous paragraphs in Defendants' SOFs, Coe states that he lacks the requisite knowledge necessary to form a belief as to the truth of certain allegations and, therefore, is unable to admit or deny them. That is the proper response to an answer to a complaint, not a SOF. Accordingly, the facts in Defendants' SOFs are deemed admitted, to the extent they are supported by the accompanying citations to the record.

Local Rule 56.1 also requires an opposing party who wishes to assert facts not set forth in the SOF to file a statement of additional material facts ("SOAF"). In an SOAF, "[e]ach asserted fact must be supported by citation to the specific evidentiary material, including the specific page number, that supports it. The court may disregard any asserted fact that is not supported with such a citation." N.D. Ill. L.R. 56.1(d)(2). Coe's SOAF is deficient in a number of respects. Because paragraphs 21 and 32 are not supported by any citation to the record, the Court disregards them. Likewise, paragraphs 4, 8, 12, 14, 16, 17, and 22 cite only to Coe's third amended complaint. Allegations in a complaint are not evidence. *See Estate of Perry v. Wenzel*, 872 F.3d 439, 461 (7th Cir. 2017) ("[T]o meet his burden at summary judgment, . . . a plaintiff must do more than simply point to the allegations in his complaint[.]"). Therefore, the Court disregards those paragraphs as well.

The remainder of the paragraphs cite to evidence. But in certain cases, the cited deposition testimony bears no connection to the asserted fact. For example, in support of the proposition that Coe "requires firm, high-top shoes to support his ankles and hold his leg braces in order to walk properly," he cites his testimony as to what he wore when he entered the facility. R. 210 ¶ 7. In such cases, the Court only considers the asserted fact to the extent it is supported by the cited evidence in the record. Further, in paragraphs 29 to 31, Coe cites to evidence produced four years after the close of fact discovery, namely prison and other medical records from 2022 related to a referral for foot surgery. Evidence that is not disclosed pursuant to the rules governing discovery cannot be used in conjunction with a motion for summary

judgment unless the failure to disclose "was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Coe offers no justification for his failure to disclose these 2022 records. Yet, for the reasons that follow, even if the Court were to consider these records, Defendants' motions must still be granted.

II. Deliberate Indifference

"A prison official's 'deliberate indifference' to a prisoner's 'serious medical needs' violates the Eighth Amendment." *White v. Woods*, 48 F.4th 853 (7th Cir. 2022) (quoting *Farmer v. Brennan*, 511 U.S. 825, 835 (1994)). In the prison medical context, courts undertake a two-step analysis:

> First, [the Court] examines whether a plaintiff suffered from an objectively serious medical condition. Then, [the Court] examines the prison official's subjective state of mind to determine whether the official acted with deliberate indifference to the prisoner's medical needs. To establish that a prison official acted with deliberate indifference, a plaintiff must provide evidence that an official actually knew of and disregarded a substantial risk of harm. Mere negligence is not enough and even objective recklessness—failing to act in the face of an unjustifiably high risk that is so obvious that it should be known—is insufficient to make out a claim.

*Id.* at 861–862 (citing *Petties v. Carter*, 836 F.3d 722, 727–28 (7th Cir. 2016)) (cleaned up). The Court's analysis as to each claimed Eighth Amendment violation follows.

A. Count 1: Officers Atkins and Best

Coe alleges that Officers Atkins and Best were deliberately indifferent to his serious medical need for firm, high-top shoes to support his leg braces when they confiscated his Air Jordans and replaced them with standard issue shoes. The officers argue that they were not deliberately indifferent because Coe does not have a serious

6

medical need for Air Jordans or other firm, high-top shoes and, even if he did, they were not aware of any such need.

Certainly, Coe has a serious medical condition. He suffers from significant nerve damage, and as a result, he does not have feeling in his feet and requires leg braces to walk. Coe claims that this condition required him to have a firm, high-top shoe to support his braces. There is some evidence that medical professionals agreed. Schwarz concluded that Coe should be allowed to keep the shoes he came to the facility with because he suffered from foot drop. And Dr. Davida indicated on the referral form that Coe needed "well cushioned and arched walking shoes." Viewing this evidence in Coe's favor, a reasonable jury might conclude that there was a serious medical need for supportive high-top shoes.

However, even if Coe had a serious medical need for such shoes, there is no evidence that Officers Atkins and Best were aware of it. Officer Best initially asked Coe whether he had a permit for the Air Jordans. After reviewing the September 2014 permit, which had indisputably expired, Officers Best and Atkins immediately went to the HCU and asked staff whether Coe had an active permit. It was only after HCU staff told the officers that Coe did not have an active medical permit for the Air Jordans that they confiscated the shoes and replaced them with standard-issue shoes.

Coe claims that Schwarz told the officers that the permit would be renewed past its expiration date. The only evidence Coe cites in support of this claim is his complaint. As stated previously, allegations in a complaint are not evidence. *See Perry*, 872 F.3d at 461. When asked about this allegation, Coe testified that Schwarz

7

told him, sometime after one of his injuries, that she had instructed Officers Atkins and Best not to confiscate his shoes. R. 204-1 at 81:7–17. That is hearsay, Schwarz is not a party in this case, and Coe has not explained how the statement fits into any exception. Further, Schwarz testified that she did not direct any staff that Coe needed to keep the shoes that he arrived with. R. 204-7 at 54:13–19, 63:21–64:2.

The officers were entitled to rely on the fact that there was no active medical permit as to whether Coe had a serious medical need for his Air Jordans or other high-top shoes. *See Enge v. Dethrow*, No. 19-CV-06151, 2023 WL 1970334, at *5 (N.D. Ill. Feb. 13, 2023) (citing *Arnett v. Webster*, 658 F.3d 742, 755 (7th Cir. 2011)) ("A defendant not trained in medical care, such as a correctional officer, may generally rely on the expertise of medical personnel who are providing care."). There is also no evidence tending to suggest that Coe's need for a certain type of shoe to support his leg braces or the associated risk of not having those shoes was obvious to Officers Best and Atkins. Moreover, the officers' effort to follow up with medical staff before confiscating the Air Jordans is a far cry from "callous disregard" for Coe's well-being. *Rasho v. Jeffrey*s, 22 F.4th 703, 710 (7th Cir. 2022). No reasonable jury could find that Officers Best and Atkins acted with deliberate indifference.

B. Count II: Dr. Ritz

Coe alleges that Dr. Ritz was deliberately indifferent when he denied the referral from Dr. Davida.[1] As stated, Coe undoubtedly suffers from an objectively

---

[1] Coe appears to confuse Dr. Ritz's denial of the referral with a refusal to extend the permit that allowed Coe to keep his Air Jordans for 30 days. *E.g.,* R. 211 at pp. 7, 8.

8

serious medical condition. But Coe cannot show that Dr. Ritz "actually knew of and disregarded a substantial risk of harm" to Coe from denying the referral. *Petties*, 836 F.3d at 728.

At the start, there is no evidence that Dr. Ritz knew that Coe even wore leg braces, what type of braces they were, and whether they required a particular type of shoe to keep them in place. Dr. Ritz never examined Coe. He merely reviewed the referral form, which was all the information he received about Coe, and determined the medical necessity for the requested equipment. The referral form made no mention of leg braces.

At most, Dr. Ritz knew that Coe had foot drop and paraparesis from a prior injury. Based on that information, Dr. Ritz concluded that the requested walking shoes were not medically necessary. There is nothing in the record to suggest that Dr. Ritz's conclusion was "so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment." *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006). Indeed, even if Dr. Davida disagreed, he apparently declined to appeal. *Cf. Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 234 (7th Cir. 2021) ("[W]here the evidence shows that a decision was based on medical judgment, a jury may not find deliberate indifference, even if other professionals would have handled the situation differently.").

---

The referral does not request that Coe be allowed to keep his Air Jordans or reference any permit. It does not even request high-top shoes. Instead, it requests "NRC commissary walking shoes," which are otherwise described as "well cushioned and arched walking shoes." R. 201-3. What's more, Dr. Ritz did not have the authority to issue or approve permits, nor had the permit expired by the time of Dr. Ritz's review.

9

Coe argues that his injuries in the months following the denial of the referral shows that Dr. Ritz's conduct was so inadequate as to constitute deliberate indifference. If the fact of subsequent injury were enough to create a fact issue as to deliberate indifference, summary judgment would never be granted. Perhaps injuries can show the obviousness of a risk. But as previously discussed, there was nothing in the referral to indicate to Dr. Ritz a substantial risk that Coe's braces would slip out of the standard issue shoes and he would injure himself. Coe's related argument that Dr. Ritz failed to reconsider the denial after the two injuries also fails. There is no evidence that Dr. Ritz was made aware of the injuries. Dr. Ritz's only involvement in Coe's treatment was the denial of the referral in October 2014, for which there was never any appeal.

Coe lastly contends that Dr. Ritz should have known that Coe could not afford to buy the walking shoes from the commissary. Coe has offered no evidence as to his financial means at that time. Even if there was such evidence, it is undisputed that Dr. Ritz did not know whether Coe could afford commissary walking shoes, and mere negligence is insufficient. *See Clemons v. Wexford Health Services*, 2024 WL 3262726, at \*4 (7th Cir. July 2, 2024). There is simply no evidence that Dr. Ritz "knew better than to make the medical decision[] that [he] did." *Petties*, 836 F.3d at 731. For that reason, no reasonable jury could find that he acted with deliberate indifference.

C. Count III: Officers Bragg and Stanback

Coe alleges that Officers Bragg and Stanback were deliberately indifferent by delaying his treatment after he injured his toe in December 2014. Specifically, Coe

10

claims he screamed for help and Officers Bragg and Stanback, who were in direct earshot, ignored him. He was taken to the HCU about an hour and a half later by a different correctional officer, where he received treatment. The officers respond that a stubbed toe is not an objectively serious medical condition, that 90 minutes is not an unreasonable delay, and that they never heard Coe or any inmate screaming for medical assistance.

"[D]elays are common in the prison setting with limited resources, and whether the length of a delay is tolerable depends on the seriousness of the condition and the ease of providing treatment." *Id.* at 730 (citing cases). Importantly, "[t]o show that a delay in providing treatment is actionable under the Eighth Amendment, the plaintiff must also provide independent evidence that the delay exacerbated the injury or unnecessarily prolonged pain." *Id.* Here, Coe has not set forth any evidence that the 90-minute delay made his injury any worse or that being taken to the HCU sooner would have alleviated that pain. Indeed, he does not offer any information about what type of treatment he ultimately received at the HCU and what the effect of receiving that treatment sooner would have been. For example, there is nothing in the record suggesting that Coe received pain medication from HCU staff, such that the delay in visiting the HCU unnecessarily prolonged his pain.

The only evidence that Coe points to are records that purportedly show he underwent surgery in 2022 to correct the "severe dislocation and bone laceration" on

11

the same toe.[2] Those records were not produced to defense counsel until four years after the close of fact discovery. But even if the Court were to consider them, they do not create a dispute of material fact as to the officers' deliberate indifference. While the records reflect a dislocation of the second toe on his left foot, there is no indication as to the cause of that condition. The records do not make any mention of the injury from December 2014, which was nearly eight years before, and Coe testified there were no medical records reflecting any dislocation from the December 2014 injury. Without more, no reasonable jury could infer any connection between the surgery and the injury at issue, and there is no genuine issue of fact as to whether the delay reflected deliberate indifference.

## Conclusion

For the foregoing reasons, the Court grants Defendants' motions for summary judgment.

ENTERED:

*Thomas M Durkin*

Honorable Thomas M. Durkin
United States District Judge

Dated: August 6, 2024

---

[2] Relatedly, Coe claims in response to the Officer Defendants' SOF that the surgeon who performed the 2022 surgery "informed him that the delay in treatment and refusal to refer [Coe] to a specialist immediately following both incidents has caused the toe dislocations to worsen." R. 209 at p. 17. This is hearsay. In addition, the assertion is not supported by any citation, nor is there any sworn statement from any medical professional in the record.